UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Dr. Lisa Tibor,

      Plaintiff,

v.                                                                          Case No. 14-10920

Michigan Orthopaedic Institute, *et al.*,                 Sean F. Cox
                                                                            United States District Court Judge

      Defendants.

_____/

## OPINION & ORDER

      Plaintiff is a surgeon who was negotiating an employment arrangement with Defendants

Michigan Orthopaedic Institute ("MOI") and William Beaumont Hospital ("Beaumont").  She

alleges that after she moved here from California, and after she began working for Defendants,

they asked her to sign certain contracts that she believed violated the law. Plaintiff alleges that

she advised Defendants that the contracts violated the law and that Defendants  terminated her

employment after she refused to sign the contracts.  Thereafter, Plaintiff filed this action against

Defendants, asserting two counts: 1) "Retaliation in Violation of the False Claims Act" (Count

I); and 2) "Discharge in Breach of Public Policy (under Michigan law)" (Count II).   The matter

is currently before the Court on Motions to Dismiss filed by Defendants.  The parties have

briefed the issues and the Court heard oral argument on November 20, 2014.  The Court shall

grant the motion in part and deny the motion in part.   As explained below, the Court rejects all

three of Defendants' challenges to Plaintiff's False Claims Act Count.  The Court also

concludes, however, that Plaintiff cannot proceed with a state-law public policy claim because

the False Claims Act provides the exclusive remedy for her alleged retaliatory discharge.  As

1

such, Count II, which was pleaded in the alternative, shall be dismissed.

## BACKGROUND

Plaintiff Dr. Lisa Tibor ("Plaintiff") filed this action on February 28, 2014, asserting claims against the following two Defendants: 1) MOI; and 2) Beaumont.  Plaintiff's Complaint asserts two counts: 1) "Retaliation in Violation of the False Claims Act" (Count I); and 2) "Discharge in Breach of Public Policy (under Michigan law)" (Count II).  Plaintiff filed the action in this Court based upon federal-question jurisdiction over Count I, the False Claims Act claim.

Plaintiff's Complaint includes the following allegations.  Plaintiff is an orthopedic surgeon, who specializes in hip preservation and shoulder surgery.  (Compl. at ¶ 2).

"Between August 28, 2012, and August 30, 2012, Defendants, Oakland Orthopaedic (an orthopaedic physician group working with Defendants) and Beverly Hills Orthopedists (an orthopaedic physicians group working with Defendants) met with Plaintiff regarding a possible employment arrangement with Defendants, Oakland Orthopaedic, and Beverly Hills Orthopaedic." (Compl. at ¶ 18).  "Defendants, Oakland Orthopaedic, and Beverly Hills Orthopedists were inducing Plaintiff to move from her home in California to Michigan to take a position as an orthopedic surgeon whose time would be split between Oakland Orthopaedic and Beverly Hills Orthopedists, in conjunction with Defendant Beaumont."  (Compl. at ¶ 18).

Prior to and at these meetings, Plaintiff had been informed that MOI, Oakland Orthopaedic, and Beverly Hills Orthopedists and others were forming an orthopedic "super group" for which Defendant Beaumont was the primary hospital.  Dr. Ira Zaltz informed Plaintiff

that the proposed super-group would include MOI, Oakland Orthopaedic Institute and Beverly

Hills Orthopedists and other groups.  The formation of the proposed orthopedic super-group was

to gain more power and influence to negotiate more favorable terms with Beaumont and fix

prices for orthopedic services to patients of Defendant Beaumont.  (Compl. at ¶¶ 19-21).

In his role as Chief of Orthopedic Surgery at Beaumont, Dr. Harry Herkowitz was the

main driving force behind the formation of the orthopedic supergroup.  Dr. Herkowitz treated all

orthopedic groups who would become part of the super-group as if they were interchangeable,

made possible in part through a web of contracts, memoranda of understanding, recruitment

agreements and other agreements by and between orthopeadic groups and/or Defendant

Beaumont hospital.  (Compl. at ¶¶ 22-23).

In discussions with the Plaintiff regarding her employment with Defendants, Dr.

Herkowitz would find Plaintiff employment at one of the orthopedic groups comprising the

super-group.  As the Chief of Orthopedic Surgery at Beaumont, Dr. Herkowitz exercised

power over each orthopedic group that used Defendant Beaumont as their primary hospital

(groups that would later form the super-group).  (Compl. at ¶¶ 24-25).

On September 15, 2012, MOI and OOG agreed to consider employing Plaintiff half time

at Defendant MOI and half time at Oakland Orthopaedic. (Compl. at ¶ 28).

On or around September 27, 2012, Plaintiff was told by Dr. Herkowitz, on behalf of

Defendants, that her position would now be entirely at MOI.  Defendants informed Plaintiff that

her employment arrangements would be as follows: (1) two days per week doing clinical work at

Defendant MOI; (2) one day per week of protected research; and (3) two days per week in the

operating room at Defendant Beaumont as her clinical workload increased.  Plaintiff understood

3

that Defendant Beaumont would provide the funding to Defendant MOI for her salary for the first year of the arrangement.  Defendant Beaumont was willing to fund Plaintiff's salary because Dr. Herkowitz (Chief of Orthopedic Surgery at Beaumont) wanted Plaintiff to assist Dr. Zaltz with his research being conducted at Beaumont, in addition to the clinical work for Defendants. (Compl. at ¶¶ 30-34).

Defendants expressed that they would try to arrange for Plaintiff to have hospital privileges by November 1, 2012. Based on this arrangement, Plaintiff could begin practicing in Michigan and take the Orthopaedic Surgery Oral Board examination in July 2014 (as per the rules of the American Board of Orthopaedic Surgery).  For the credentialing process, Defendants required Plaintiff to become credentialed under the tax code that was created for the super-group. (Compl. at ¶¶ 35-36).

On September 27, 2012, Plaintiff agreed to take the position with Defendants with the understanding that Defendant Beaumont would provide the funding to Defendant MOI for Plaintiff's salary for the first year.  In a subsequent conversation, Plaintiff was informed that Defendants would take care of her moving expenses from California to Michigan.  (Compl. at ¶¶ 37-38).

In early October, 2012, Plaintiff met with Diane Blackburn, Recruiter for Defendant Beaumont, regarding her employment with Defendants. Plaintiff and Ms. Blackburn discussed her hospital privileges with Defendant Beaumont. Plaintiff was provided a packet of information regarding being a Defendant Beaumont physician.  (Compl. at ¶¶ 39-40).

On October 30, 2012, Plaintiff moved from California to Michigan.  On November 1, 2012, Plaintiff began her employment with Defendants and treated her first patient on November

8, 2012.  (Compl. at ¶¶ 41-43).

On November 26, 2012, Defendants sent Plaintiff "non-final" versions of a proposed recruitment agreement and an employment agreement.  The proposed recruitment agreement identifies Defendant Beaumont, Defendant MOI and Plaintiff as the parties entering into the agreement.  (Compl. at ¶¶ 44-45).

Plaintiff was concerned with the proposed recruitment agreement because it appeared that Defendant Beaumont was seeking concessions including a referral agreement whereby Defendant MOI would agree to forego competition in its imaging market and refer exclusively to Defendant Beaumont. Plaintiff also believed this to be a violation of the Stark Anti-Referral Law.  The proposed recruitment agreement stated that Defendant Beaumont would provide the "financial assistance" to enter into an "employment relationship" with the Plaintiff.  According to the proposed recruitment agreement, Defendant Beaumont agreed to pay Plaintiff two hundred and fifty thousand dollars ($250,000.00) for twelve months, with the expectation that Plaintiff would continue to work for Defendants or in the geographic catchment area for Defendant Beaumont for at least four years after the initial 12 month period. (Compl. at ¶¶ 46-48).

The proposed "agreement" stated that the parties were entering into the agreement as of the "1st day of November 2012," the first day of Plaintiff's employment with Defendants.  (Compl. at ¶ 49).

On November 15, 2012, Plaintiff received her first paycheck from Defendants.  (Compl. at ¶ 50).

Plaintiff discussed the agreements with the Defendants many times throughout December of 2012.  Plaintiff believed that the recruitment agreement was potentially violating the Stark

5

Anti-Referral Law and would put both Defendants and Dr. Tibor at risk for violating the False Claims Act. Defendants had knowledge of Plaintiff's concerns with the proposed agreement. (Compl. at ¶¶ 52-53).

Plaintiff reasonably believed that if she signed the proposed backdated recruitment agreement (more than six weeks after starting to work and receiving a salary) she would be violating the Stark Anti-Referral Law. (Compl. at ¶ 53).

On January 11, 2012, Plaintiff's attorney notified Defendants that the proposed backdated agreement posed a compliance problem if the Plaintiff were to sign the backdated agreement. Specifically, Plaintiff's attorney concerns were related to Defendants' position that Plaintiff was being asked to sign the backdated recruitment agreement that would be past the thirty (30) day period in which Defendants were supposed to have the agreement signed in order to be compliant under federal health care regulations pursuant to 42 CFR §411.353(g)(i). Since it was well over the thirty (30) days since Plaintiff began employment with Defendants, if Plaintiff signed the backdated agreement it would have been a violation of the Stark Anti-Referral Law and False Claims Act. (Compl. at ¶¶ 57-59).

Plaintiff refused to sign the proposed backdated recruitment agreement because she believed it was an illegal contract. (Compl. at ¶ 60). Plaintiff spoke with Dr. David Collon and explained that she could not sign the backdated recruitment agreement because she believed it would be a violation of the Stark Anti-Referral Law. (Compl. at ¶¶ 61).

On January 17, 2013, Defendants terminated Plaintiff's employment for refusing to sign the backdated recruitment agreement, which Plaintiff had objected to because she believed it to be illegal. (Compl. at ¶ 67).

Both of the Defendants filed Motions to Dismiss.  Plaintiff filed a combined response brief, opposing both motions.  The Court heard oral argument on the motions on November 20, 2014.

**Standard Of Decision**

Both of the pending Motions to Dismiss are brought pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true.  *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005).  When evaluating the adequacy of the allegations contained in a complaint, a district court may consider documents referenced in, or attached to, the complaint and central to the plaintiff's claims. *Devlin v. Kalm*, 531 F. App'x 697, 703 (6th Cir. 2013) (citing *Amini v.Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## ANALYSIS

**I.     Challenges To Count I, The False Claims Act Count**

Both Defendants challenge Count I, and seek dismissal of Plaintiff's claims under the False Claims Act.

Defendant Beaumont raises the following grounds for relief as to Count I: 1) Plaintiff fails to state a claim for retaliation against Beaumont under the False Claims Act because the False Claim Acts' retaliation provision only applies to actions by an employer or an entity in control of the employment and Beaumont did not control the terms and conditions of Plaintiff's employment with MOI; and 2) the False Claims Act claims must be dismissed because Plaintiff failed to comply with the procedural requirements under § 3730.

Defendant MOI raises the following grounds for relief as to Count I in its motion: 1) Plaintiff has failed to state a claim upon which relief could be granted for retaliation against Defendant MOI under 31 U.S.C. § 3730(h) because: a) Plaintiff has not alleged she was engaged in protected activity as defined by the False Claims Act; and b) Plaintiff cannot allege that her employer knew that she engaged in a protected activity; and 2) the False Act claims must be dismissed because Plaintiff failed to comply with the procedural requirements under 31 U.S.C. §3730.

### A.   Should Count I Be Dismissed Because Plaintiff Failed To Comply With The Procedural Requirements Under 31 U.S.C. § 3730?

Both Defendants assert that Count I should be dismissed because Plaintiff failed to comply with the procedural requirements under 31 U.S.C. § 3730.  Their briefs first note that the False Claims Act allows an individual to bring a claim for a violation of § 3729 for the person and for the United States government but there are strict procedural requirements that must be met in order to do so. They cite *U.S. ex rel. Summer v. LHC Group, Inc.*, 623 F.3d 287 (6th Cir. 2010) for the proposition that an individual cannot pursue such an action unless they meet those strict requirements.

Defendants then direct the Court to *Eastman v. Marine Mech. Corp.*, 438 F.3d 544 (6th Cir. 2006) and assert that "[t]he absolute bar to claims filed under the False Claims Act for failure to comply with the procedural requirements applies to retaliation claims under §3730(h)." (*See* MOI's Br. at 12).  Defendants assert that the *Eastman* "court held that the district court did not have jurisdiction to hear the retaliation claims under 31 U.S.C. §3730(h) because the procedural requirements were not met."  (MOI's Br. at 12).  Defendants also direct the Court to another opinion, *Hammond v. Department of Veterans Affairs*, 2009 WL 2382539 (E.D. Mich.

July 30, 2009).

Notably, however, Defendants do not direct this Court to any specific provisions of the False Claims Act that support their position that a person filing a retaliation claim filed under § 3730(h) has to meet the same procedural requirements that person asserting a claim under § 3729 must meet.

In opposing this ground for relief, Plaintiff asserts that the procedural requirements that apply to a claim asserted under § 3729 simply do not apply to a retaliation claim asserted under § 3730(h). Plaintiff states that she "has not brought a claim alleging a violation of 3729. Instead, she has alleged a violation of Section 3730(h), which provides for "Relief from retaliatory actions.'" (Pl.'s Br. at 6). Plaintiff further asserts that she "need not in any way actually show that Section 3729 was violated to prove her claim. The Supreme Court specifically held that 'proving a violation of § 3729 [which defines False Claims] is not an element of a § 3720(h) cause of action.' *Graham County Soil & Water Conservation Dist. v. United States ex rel Wilson*, 545 U.S. 409, 416 n.1 (2005). Furthermore, Section 3720(h) provides no potential relief for the government, and the claim need not be pursued on the government's behalf." (Pl.'s Br. at 6).

Plaintiff states that "[n]o court that Plaintiff is aware of has ever suggested that a plaintiff pursuing only a retaliation claim under Section 3730 need to file the complaint under seal in the same fashion that a '*qui tam*' suit would be filed." (Pl.'s Br. at 7). Plaintiff further states that the portions quoted from *Eastman* are *dicta* and that *Eastman* "is not even an FCA retaliation case." (Pl.'s Br. at 7).

As explained below, this Court agrees with Plaintiff and finds this challenge to be

9

without merit.

The Court begins with the relevant portions of the statute itself.  Section 3729 provides

liability for persons who make various types of false claims to the government.  31 U.S.C. §

3729.  Section 3730(b) provides, in pertinent part:

> **(b) Actions by private persons**. – (1) A person may bring *a civil action for a*
> *violation of section 3729* for the person and for the United States Government.
> The action shall be brought in the name of the Government.  The action may be
> dismissed only if the court and the Attorney General give written consent to the
> dismissal and their reasons for consenting.
> (2) A copy of the complaint and written disclosure of substantially all material
> evidence and information the person possess shall be served on the Government
> pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  The complaint
> shall be filed in camera, shall remain under seal for at least 60 days, and shall not
> be served on the defendant until the court so orders.  The Government may elect
> to intervene and proceed with the action within 60 days after it receives both the
> complaint and the material evidence and information.

31 U.S.C. § 3730(b) (bolding in original; italics added for emphasis added).  These kind of False

Claim Act actions, filed by a person on his own behalf and on behalf of the government are

referred to as "*qui tam*" actions.  *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S.

765, 768 n.1 (explaining "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam*

*pro se ispo in hac parte sequitur*, which means 'who pursues this action on our Lord the King's

behalf as well as his own.").  If the government elects to proceed with the action, the person who

brought the suit receives a portion of the settlement or judgment.

Here, however, Plaintiff is *not* asserting a claim under § 3729 in this action.  Rather, she

asserts a retaliation claim under § 3730(h), which provides, in its entirety, as follows:

**(h)  Relief from retaliatory actions.**--

**(1) In general**.--Any employee, contractor, or agent shall be entitled to all relief
necessary to make that employee, contractor, or agent whole, if that employee,
contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in

any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

**(2) Relief.**--Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. *An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.*

**(3) Limitation on bringing civil action**.--A civil action under this subsection may not be brought more than 3 years after the date when the retaliation occurred.

31 U.S.C. § 3730(h) (bolding in original; italics added for emphasis).  Notably, Section 3730(h)(2) directs that "[a]n action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection" but states nothing about the person filing the action being required to sue in the name of the government, file the action under seal, or comply with any of the other procedural requirements that apply to a person bringing a claim under Section 3729.  Thus, there is no support in the statute itself for Defendants' position.

Moreover, the case law that Defendants rely on also does not help them.  *Eastman* did not actually involve a retaliation claim brought under the False Claims Act and that the language Defendants rely on is *dicta.*  In *Eastman*, the plaintiff brought suit in state court, asserting "an Ohio common-law claim of retaliatory employment discharge in violation of public policy." *Eastman*, 438 F.3d at 544.  As the Sixth Circuit recognized, Plaintiff carefully drafted his complaint to assert only a state-law claim:

he assiduously avoided bringing an action under federal law, as was his choice. His reference to federal statutes was not intended to suggest that federal law

11

provided him a right to relief, he says, but they were mentioned only as establishing the public policy that the defendant's actions violated.

*Eastman, supra,* at 550.  In other words, the plaintiff there brought only a claim for retaliatory discharge in violation of public policy – a claim akin to Count II in Plaintiff's Complaint here. Unlike Plaintiff in this action, the plaintiff in *Eastman* did not assert a retaliation claim under § 3730(h).

Moreover, while the *Eastman* decision referenced §3730(h) in stating that the False Claims Act "protects whistleblowers only to the extent that they follow the Act's procedures. *See* § 3730(h)," the decision does not explain or discuss what procedures must be complied with in order to proceed with a retaliation claim under § 3730(h).

As such, the Court looks to the statute itself to determine what, if any, procedures must be followed before an individual can file a retaliation claim under § 3730(h).  And as explained above, by its terms, the statute does not require an individual pursuing a retaliation claim under § 3730(h) to sue in the name of the government, file the complaint under seal, or follow any of the other procedures that apply to a person bringing suit under § 3729.

The Court rejects Defendants' argument and shall deny this ground for relief.

**B.      Does Plaintiff Fail To State A False Claims Act Retaliation Claim Against Beaumont Because Beaumont Was Not Plaintiff's Employer And Did Not Control The Terms Or Conditions Of Plaintiff's Employment With MOI?**

In its motion, Defendant Beaumont asks this Court to dismiss the False Claims Act count as to it, because: 1) the act's retaliation provision only applies to an action by an employer or an entity in control of the employment; and 2) Beaumont did not control the terms and conditions of Plaintiff's employment.  (Def. Beaumont's Br. at 9-10).

In the first section of the motion, that attempts to establish that the retaliation provision

12

only applies to an action by an employer or an entity in control the employment (*see* Beaumont's Br. at 8-9), Beaumont quotes a case in a manner that appears to suggest that a retaliation action can only be asserted against an employer:

> "A claim under 31 U.S.C. § 3730(h) requires proof that the plaintiff was (1) engaged in a protected activity; (2) his employer knew that he engaged in the protected activity; and 3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity." *United States ex rel. Marlar v. BWXt Y-12, LLC*, 525 F.3d 439, 449 (6th Cir. 2008) (emphasis added).

(Def.'s Br. at 8-9) (emphasis in original).

The current version of the False Claims Act, however, is not limited to "employees" and was broadened to include "contractors" and "agents" who are discriminated against because they engaged in protected activity.  The current version of the statute provides that *"Any employee, contractor, or agent* shall be entitled to all relief necessary to make that *employee, contractor, or agent* whole, if that *employee, contractor, or agent* is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."   31 U.S.C. §3730(h) (emphasis added).

Beaumont also cites the following two cases for the proposition that the retaliator must either be the employer or an entity with the ability to control and adversely affect the employment relationship: 1) *Chiles v. Machine Shop, Inc.,* 238 Mich. App. 462 (1999); and 2) *Vander Boegh v. EngerySolutions, Inc*., 536 F. App'x. 522 (6th Cir. 2013).

*Chiles,* however, is not a case that involved a retaliation claim brought under the False Claims Act.  Rather, it was a retaliation claim brought under Michigan's Persons with

13

Disabilities Civil Rights Act ("PWDCRA") and the Worker's Disability Compensation Act ("WDCA"). The case does not help Beaumont because the PWDCRA prohibits "employers" from engaging in various practices and the WDCA prohibits "employers" from engaging in various practices. Again, the statute here is not limited to actions against employers.

The Court also fails to see how *Vander Boegh* helps Defendant Beaumont. The opinion does discuss, as a general proposition, that a decision maker needs to be aware of the alleged protected activity prior to making the alleged adverse decision in order to support a retaliation claim. But the case does not elaborate on the entities who can be sued for retaliation under the current language, that includes contractors and agents. Indeed, the decision notes that the district court never addressed a defendant's argument that the plaintiff's claim failed as to it because the plaintiff was never employed or managed by it, and remanded that issue for consideration by the district court without further discussion:

> . . . EnergySolutions argues that Vander Boegh's retaliation claim under the FCA fails as a matter of law because Vander Boegh was never employed, managed, or supervised by EnergySolutions. *See* 31 U.S.C. § 3730(h)(1) (limiting relief from retaliatory acts to "any employee, contractor, or agent."). The district court did not reach this issue. In light of the above analysis, reversing the grant of summary judgment, we direct the district court to address this issue on remand.

*Id.* at 532.[1]

Beaumont also cites two cases, *Poffinbarger* and *U.S. ex el re Head*, for the proposition that the alleged retaliation must occur during the period of employment. The Court fails to see

---

[1]As will be explained later, following remand, the district court granted summary judgment in favor of the defendant because the plaintiff, who conceded he was not an employee, independent contractor, or agent for the defendant, lacked standing. *Boegh v. EngerySolutions, Inc.*, 2013 WL 714237 (W.D. Ky. Dec. 17, 2013). The Sixth Circuit recently affirmed that ruling and addressed the broadened scope of the Act in *Boegh v. EnergySolutions, Inc.*, __ F.3d __ (6th Cir. Nov. 18, 2014).

how that helps Beaumont, given that Plaintiff alleges that: 1) she was employed by both Defendants; 2) that her employment began on November 1, 2012 (without her having signed an agreement with Defendants); and 3) she was retaliated against on January 17, 2013, when defendants terminated her.  Thus, this case does not involve alleged retaliatory acts that occurred after the alleged employment relationship ended.

After asserting that it has established that liability can only be imposed on an employer or entity that controls the terms and conditions of employment, Beaumont then asserts that Plaintiff's complaint "and the incorporated agreements demonstrate that Plaintiff was not a *Beaumont employee* and that Beaumont did not control her employment with MOI."  (Def. Beaumont's Br. at 10(emphasis added).  Beaumont further asserts that the "Employment Agreement also proves[2] that Plaintiff was an employees of MOI only."  (*Id*. at 13).

In response to Beaumont's motion, Plaintiff asserts that Beaumont's argument fails for at least two reasons.

First, Plaintiff correctly notes that "there is no requirement in the FCA retaliation provision that the defendant actually be an employer" and that the current version of the relevant portion of the act specially includes protection for "contractors."  (Pl.'s Br. at 14).  Plaintiff further states that "Defendant Beaumont admits that Plaintiff was a contractor who was providing services to it and thus effectively admits that Section 3730(h) applies to it."  (*Id*.) Plaintiff explains her position as follows:

> The 2009 amendments to the FCA retaliation provision show a clear intent by
> Congress to prohibit retaliation by anyone who had the power and authority to

---

[2]It is undisputed that the contracts the parties negotiated and discussed were never executed.

affect the terms and conditions of employment of an employee who engaged in protected activity.  The amendments specifically expand the scope of the law to include "contractors."  Beaumont attaches the proposed contract at issue to its response and specifically cites language from that provision that "Hospital and Physician agree that Physician is acting as an independent contractor and not as an agent or employee of Hospital."  (Doc. 9 at 12).  Defendant is thus relying on a fact that actually would unambiguously bring it under the purview of the amended Section 3730(h). The purpose of the amendment to 3730(h) was to apply to situations just like this.

(Pl.'s Br. at 15).  Thus, Plaintiff first argues that the Court must reject this challenge because Beaumont claims she was an independent contractor and contractors are now included among those persons protected under the Act.[3]

The Court rejects this ground for relief because the current version of the statute also covers independent contractors and other employment-like relationships.  "The 2009 Amendments to section 3730(h) added 'contractors' and 'agents' to the description of persons within the scope of the Act's protections.  Although the amendments did not define those terms, it is clear that the purpose was to ensure that the protections of the Act extended beyond a traditional employment relationship.  The amendments sought to address court decisions that had concluded that persons who were not technically employees, such as independent contractors or doctors without traditional employment relationships with hospitals."  THE FALSE CLAIMS ACT: FRAUD AGAINST THE GOVERNMENT §5:11, *Statutory elements – Person engaged in activity protected by the statute – Contractors and agents within the scope of section 3730(h)*.  "One of the authors of this provision as it appeared in the House version of the amendments explained

_____

[3]Plaintiff also contends that even if the protections of the retaliation provision were limited to "employees," Plaintiff has alleged sufficient facts to state a colorable claim that both Defendants were her co-employers.

16

that the change was intended to 'address the need to protect persons who seek to stop violation of the Act regardless of whether the person is a salaried employee, an employee hired as an independent contractor, or an employee hired in an agency relationship.'  He further explained that the amendment would 'ensure that section 3730(h) protects physicians from discrimination by health care providers that employ them as independent contractors, and government subcontractors from retaliation by government prime contractors.'" *Id*.

Indeed, in a very recent decision, the Sixth Circuit discussed the expanded scope of §3730(h) and expressed the view that the current version of the statute covers independent contractors and other employment-like relationships:

> [A]fter Congress amended the FCA to include contractors and agents, at least one court has persuasively held that Congress still intended to limit the FCA to employment-like relationships. In *U.S. ex rel. Abou–Hussein v. Science Applications International Corp*., a plaintiff brought FCA claims against his employer and two non-employer corporations. Civ. No. 2:09–1858–RMG, 2012 WL 6892716, at *3–4 (D.S.C. May 3, 2012), *aff'd* 475 F. App'x 851 (4th Cir.2012) (per curiam). The court dismissed the claims against the two corporations because the plaintiff was not an employee, independent contractor, or agent of those defendants. *Id* . at *2–4. Examining the legislative history, the court reasoned that Congress amended the FCA to correct recent court decisions that denied FCA retaliation protection to persons in employment-like relationships that were not technically "employees" because Congress found the decisions unduly narrow. *Id*. at *3 (citing *Vessell v. DPS Assocs*., 148 F.3d 407, 411 (4th Cir.1998) and *U.S. ex rel. Watson v. Conn. Gen. Life Ins. Co.*, 87 F. App'x 257, 261 (3d Cir.2004)). The court reasoned that Congress intended to " 'correct this loophole' " and extend protection to " 'individuals who [a]re not technically employees within the typical employer[-]employee relationship, but nonetheless have a contractual or agent relationship with an employer.' " *Id*. at *3 (quoting S.Rep. No. 110–507, 110th Cong., 2d Session (Sept. 25, 2008), 2008 WL 4415147, at *26–27). Additional legislative history supports this interpretation. See 155 Cong. Rec. E1295–03, 2009 WL 1544226 (June 3, 2009) (statement of Rep. Howard L. Berman) (stating, as the House sponsor of the amendment, that the purpose was to "cover [ ] ... retaliation against contractors and agents of the discriminating party who have been denied relief by some courts because they are not technically 'employees' " and to "protect persons who seek to stop [FCA violations] regardless of whether the person is a salaried employee,

an employee hired as an independent contractor, or an employee hired in an agency relationship.") (emphasis added).

*Boegh v. EnergySolutions, Inc*., __ F.3d __ at * 5 (6th Cir. Nov. 18, 2014).

C.   **Has Plaintiff Failed To State A Claim Upon Which Relief Could Be Granted For Retaliation Against MOI?**

MOI asserts that Plaintiff has failed to state a claim upon which relief could be granted for retaliation against Defendant MOI under 31 U.S.C. § 3730(h) because: a) Plaintiff has not alleged she was engaged in protected activity as defined by the False Claims Act; and b) Plaintiff cannot allege that her employer knew that she engaged in a protected activity.

In order to state a prima facie claim of retaliation under 31 U.S.C. § 3730(h), Plaintiff must show: 1) she engaged in "protected activity" under the statute; 2) Defendant knew that she engaged in the protected activity; and 3) Defendant discharged or otherwise discriminated against her because of the protected activity.  *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 566 (6th Cir. 2003); *Thomas v. ITT Educ. Svs., Inc*., 517 F. App'x. 259, 262 (5th Cir. 2013).

In order to determine if Plaintiff has sufficiently alleged that she engaged in protected activity, and that MOI knew of that activity, the Court must consider what constitutes "protected activity" under the False Claims Act.

Again, Plaintiff brings her retaliation claim under 31 U.S.C. § 3730(h).  Significantly, that section was amended in 2009 and 2010.  Protected activity in the former version of the statute was limited to *"lawful acts done* by the employee on behalf of the employee or others *in furtherance of an action under this section,* including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section . . ."  Former version of 31 U.S.C. §3730(h) (emphasis added). Protected activity in the current version, however, includes

18

"*lawful acts done* by the employee, contractor, agent or associated others *in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.*"  31 U.S.C. §3730(h) (emphasis added).  Thus, under the old version of the statute, protected activity was lawful acts done by the Plaintiff "in furtherance of an action" under the False Claims Act.  That is, the plaintiff had to have take some action in furtherance of an action under the False Claims Act, such as investigating such an action, initiating an action, or providing testimony or assistance in an action brought under the False Claims Act.

But the current version of the statute now "protects two categories of conduct."  *Halasa v. ITT Educ. Svs., Inc*., 690 F.3d 844, 847 (7th Cir. 2012).  First, like the prior version of the statute, it still protects actions taken in furtherance of an action under the False Claims Act (i.e. a *qui tam* action under § 3729).  Second, the current version now protects "employees from being fired for undertaking 'other efforts to stop' violations of the Act, such as reporting suspected misconduct to internal supervisors."  *Id*. at 847-48.

In its brief, Defendant MOI quotes selectively from 31 U.S.C. § 7730(h), suggesting that protected activity only consists of actions taken in furtherance of an action under the False Claims Act when that is not the case:

> Protected activity means " . . . **lawful acts done by the employee, . . . in furtherance of an action . . ."** under the False Claims Act.  31 U.S.C. § 3730(h) (emphasis added).

(Def. MOI's Br. at 3) (emphasis in original).  MOI's brief cites several cases decided *prior to* the amendment of the statute and argues that "Plaintiff did not undertake any action in furtherance of a False Claims Act suit."  (*Id*. at 5).  MOI argues that Plaintiff "did not and could not plead that her actions were taken in furtherance of a *qui tam* action."  (Def.'s Br. at 10).  MOI also asserts

19

that Plaintiff's "Complaint does not state a claim upon which relief may be granted with respect to her obligation to demonstrate that MOI was on notice that Plaintiff was taking action in furtherance of a *qui tam* action." (*Id*. at 9). Thus, Defendant MOI's motion essentially ignores the second type of protected activity and asks the Court to dismiss Plaintiff's claim against it because Plaintiff has not alleged she took actions in furtherance of a *qui tam* action.[4]

Plaintiff's brief in opposition to Defendant MOI's Motion notes this fundamental problem with MOI's argument:

> MOI's other arguments also ignore the clear statutory text, suggesting that Plaintiff's claim fails because it was not "in furtherance of an action" under the False Claims Act and did not put MOI "on notice that Plaintiff was taking action in furtherance of a *qui tam* action." (Doc. 11 at 3, 9). Neither purported deficience is actually a requirement of the current version of Section 3730(h). Defendant is relying on an earlier version of a statute that has since been amended and now provides much broader protection than earlier versions of the statute.

(Pl.'s Br. at 9). Plaintiff's brief then directs the Court to several district court decisions that have recognized how the amendments broadened the protective activity under the statute. (*Id*. at 9-12).

Plaintiff contends that she satisfies her burden of stating a claim for relief under Section 3730(h). She contends that the cases she has cited "demonstrate that the 2009 amendments must be interpreted broadly to allow for internal reports of fraud and illegal behavior. Here, where Dr. Tibor's complaint deals specifically with violations of the Stark law that gives rise to an FCA

---

[4]MOI's *Reply Brief* attempts to raise additional arguments, that it did not make in its opening brief. (*See* Reply Br. at 2, arguing Plaintiff cannot show protected activity by virtue of taking action to stop a violation, and then making fact-based arguments that Plaintiff's not signing the Recruiting Agreement "cannot reasonably constitute an effort to stop a violation of the FCA.") The Court declines to address these additional arguments, raised for the first time in a reply brief. Moreover, these arguments appear to be more appropriately raised at the summary judgment phase of the case.

action, the complaint constitutes protected activity under the False Claims Act retaliation

provision.  (Pl.'s Br. at 12).  Plaintiff further asserts that her complaint "properly alleges that

Plaintiff informed Defendant of her concerns.  (Complaint ¶ 61, 64)" and that those "efforts were

more than sufficient to allege that Dr. Tibor engaged in protected activity under the 2009

amendments."  (*Id.* at 13).

The Court concludes that Plaintiff has sufficiently alleged that she engaged in protected

activity under the current version of the statute, and that Defendants were aware of that protected

activity.  The Court shall deny this ground for relief.

## II.     Challenges To Count II, The State-Law Public Policy Claim

In their motions, both Defendants challenge Count II as preempted by Plaintiff's False

Claims Act Count.  They contend that where a statute proscribes a particular adverse

employment action, that statute is the exclusive remedy and no other public policy claim can be

maintained.

In response, Plaintiff states that she pleaded Count II in the alternative.  Plaintiff states

that if further proceedings determine the False Claims Act retaliation claim is valid, at that point

dismissal of Count II would be appropriate.  (Pl.'s Br. at 21).  Plaintiff has not directed this Court

to any on-point authority that supports her position that she can proceed with both Counts I and

II of her Complaint.

The Court agrees with Defendants that Plaintiff cannot proceed with a state-law public

policy claim because the False Claims Act provides her exclusive remedy for her alleged

retaliatory discharge.

"Michigan courts have recognized a 'public policy' exception to the general rule that an

21

at-will employee may be terminated at any time and for any reason." *Humenny v. Genex Corp., Inc.*, 390 F.3d 901, 907 (6th Cir. 2004) (citing *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692 (1982)). An at-will employee's discharge violates public policy when 1) a statute specifically prohibits the discharge; 2) the employee is discharged for refusing to violate the law; or 3) the employee is discharged for exercising a well-establish statutory right. *Id.* "However, if a statute provides a remedy for a violation of a right, and no common-law counterpart right exists, the statutory remedy is typically the exclusive remedy." *Lewandowski v. Nuclear Mgmt. Co., LLC*, 272 Mich. App. 120, 127 (2006). "In other words, a public-policy claim may only be sustained if there is no applicable statute prohibiting retaliatory discharge for the conduct at issue." *Id.*

Plaintiff's Complaint asserts a claim for retaliatory discharge under the False Claims Act. Plaintiff's Complaint also asserts a claim that her discharge violates Michigan's public policy but the Complaint does not allege that the public policy at issue would be compromised, in the absence of a tort claim for wrongful discharge, because no alternative remedy exists. As such, Plaintiff cannot proceed with a state-law public policy claim in this action because, where there exists a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy and no other public policy claim for wrongful discharge can be maintained. *Lewandowski*, 272 Mich. App. at 127; *see also Tracy v. Northrop Grumman Sys. Corp.*, 2011 WL 6965839 (6th Cir. 2011) (affirming dismissal, under Fed. R. Civ. P. 12(b)(6), of the plaintiff's state-law public policy claim and ruling that, because the False Claims Act provided a remedy for her retaliatory discharge claim, the plaintiff could not proceed with a violation of public policy claim under Ohio law.)

22

**CONCLUSION & ORDER**

As explained above, the Court finds Defendants' challenges to Plaintiff's False Claims Act Count to be without merit.  But the Court concludes that Plaintiff cannot proceed with a state-law public policy claim because the False Claims Act provides her exclusive remedy for her alleged retaliatory discharge and, therefore, shall dismiss Count II.

Accordingly, IT IS ORDERED that Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART.  The motions are GRANTED to the extent that the Court DISMISSES COUNT II.  The motions are DENIED in all other respects.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  December 5, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 5, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager